USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 4/11/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES FULTON,

                Petitioner,

  - against -

OTISVILLE F.C.I. WARDEN J. BALTAZAR, ET AL.,

                Respondents.

16-cv-6085 (JGK)

MEMORANDUM OPINION & ORDER

---

JOHN G. KOELTL, District Judge:

James Fulton, proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 against the respondents Juan Baltazar, former warden at Federal Correctional Institution in Otisville, New York ("FCI Otisville"), John M. Banks, a Disciplinary Hearing Officer, Andrew Jones, a former correctional officer at FCI Otisville, and Ronald L. Rodgers, the Senior Counsel of the Administrative Remedy Branch in the Central Office of the Bureau of Prisons ("BOP").[1] The petitioner alleges that a prison disciplinary proceeding, resulting from a physical altercation between the petitioner and another inmate, violated his right to due process. The petitioner requests that

---

[1] Although petitioner names several respondents in his petition for a writ of habeas corpus, there is only one proper respondent: the current warden of the facility that has custody of the petitioner, which in this case is Daniel Kulick at FCI Otisville. See Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004); Buchanan v. Warden, FCI Otisville, No. 13-cv-6356 (ALC), 2014 WL 3778205, at *3 (S.D.N.Y. July 31, 2014). Therefore, the Clerk of Court is directed to amend the caption to substitute the current Warden of Otisville, Daniel Kulick, as the sole respondent, and to dismiss all other respondents.

the sanctions imposed on him at the hearing be lifted. In lieu of filing a reply to the respondent's return to his petition for habeas corpus, the petitioner moved for summary judgment. For the reasons discussed below, the petition for habeas corpus and the motion for summary judgment are **denied**.

I.

The petitioner was incarcerated at FCI Otisville from January 19, 2012, to September 29, 2016, after being convicted of federal counterfeit currency offenses and a firearms offense. Scannell-Vessella Decl. ¶¶ 4, 5. The petitioner was recently transferred to the Federal Detention Center in Philadelphia, Pennsylvania pursuant to a federal writ for a resentencing. Id. at ¶ 5.

This case arises from a physical altercation at FCI Otisville between the petitioner and another inmate, Kyle Bell. According to the report submitted by the Disciplinary Hearing Officer ("DHO"), on the morning of October 8, 2015, the petitioner and Bell engaged in a verbal disagreement outside of the petitioner's cell. Banks Decl. Ex D, at 3.[2] After the verbal exchange, Bell went back to his cell and then entered the petitioner's cell with a weapon -- a combination lock attached

---

[2] Because some of the exhibits submitted with the papers do not have page numbers or are numbered inconsistently, all cites to page numbers in the exhibits refer to the ECF page number included in the file stamp at the top of the page.

to a belt. Id. A physical altercation between the two inmates ensued and both inmates suffered multiple injuries. Id.

A corrections officer who was on duty that morning, Officer Andrew Jones, observed some of the incident. In a written statement provided to the Special Investigative Services Department (the "SIS") Department, Officer Jones stated that he heard the commotion coming from the petitioner's cell on the morning of October 8, 2015. Susney Decl. Ex. A. He then went to the cell and commanded both inmates to cease their fighting. Id. Before the inmates complied with his order, Jones witnessed the petitioner on top of Bell, striking him with the combination lock. (Id.)

Both the petitioner and Bell sustained injuries. Banks Decl. Ex. D, at 3. The DHO report found that petitioner sustained "a shallow laceration to the left side of [his] scalp, swelling and abrasion to back of [his] scalp and [a] scratch on the back" and that "Bell sustained skin tears to his knuckles, bruising and swelling below his left eye and a small abrasion to the side of his face near his right eye." Id.

At approximately 1:00 p.m. on the same day of the incident, the petitioner received an administrative detention order ("ADO") indicating that he was being placed in a Special Housing Unit based on fighting pending investigation of a violation of BOP Regulations. Scannell-Vessella Decl. Ex. C.

3

On October 23, 2015, the SIS submitted an incident report charging the petitioner with violations of the BOP's Code 108[3] (possession of a weapon) and Code 201 (fighting). Banks Decl. Ex. A, at 2, 4. The incident report stated, among other things, that the petitioner and Bell engaged in a verbal confrontation that escalated into a fight; that Bell brought a weapon to the fight which was ultimately obtained by the petitioner and used on Bell; and that Bell and Fulton both sustained injuries from the altercation. Id. at 2.

On October 26, 2015, the Unit Disciplinary Committee (the "UDC") held a hearing on the petitioner's charges. Banks Decl. Ex. A, at 2. The UDC determined that the charges against the petitioner as recommended by the SIS report were warranted based on Officer Jones's statement, photography evidence, medical reports, and the findings in the SIS report. Id. at 4. The UDC referred the case to a DHO for a further hearing because of the "high . . . severity" of the charges against petitioner. Banks Decl. ¶ 2, Ex. A, at 2. The petitioner was given notice of the DHO hearing on the same day, October 26, 2015, and informed of his rights. Banks Decl. ¶ 3, Exs. B, C.

---

[3] The petitioner was charged in the SIS report with a violation of Code 108. Banks Decl. Ex. A, at 2. However, the Unit Disciplinary Committee ("UDC") recommended that the charge be modified from a Code 108 to a Code 104. Id. at 4. The DHO report found that the petitioner had committed a violation of Code "104//108" and sanctions were imposed by the DHO pursuant to Code 104. Banks Decl. Ex. D, at 3.

4

On November 12, 2015, the DHO held a hearing regarding the charges against the petitioner. Banks Decl. Ex. D. At the DHO hearing, the petitioner stated: "I was fighting, but I defended myself." Id. at 2. The petitioner also stated: "I took the belt from [Bell] and had the lock in my hand, but didn't use it." Id. The petitioner also requested to call Officer Jones as a witness at the DHO hearing. The DHO denied the request because Jones was an adverse witness and a written statement from Jones was offered. Id.

The DHO ruled against the petitioner and imposed sanctions. Banks Decl. Ex. D, at 3. The sanctions imposed for the Code 104 violation were disciplinary segregation of sixty days, disallowance of twenty-seven days of good conduct time, forfeiture of fifty-three days of non-vested good conduct time, and five months loss of visiting. Id. at 3. The sanctions imposed for the Code 201 violation were disciplinary segregation of thirty days (suspended pending 180 days of clear conduct), disallowance of twenty-seven days of good conduct time, and four months loss of commissary. Id. The DHO notified the petitioner of his right to appeal the decision. Id. at 4.

The petitioner appealed the DHO decision to the BOP's Regional Director on or about December 30, 2015. Scannell-Vessella Decl. ¶ 8, Ex. D, at 2. In his appeal, the petitioner reasserted that he was not in violation of Code 201

5

because he was defending himself against Bell and also asserted that Jones and other FCI administrators "lie[d], falsif[ied] and tamper[ed]" with the evidence relating to the incident. Id. at 2-3. The petitioner further contended that he was not in violation of Code 104, possession of a weapon, because "Mr. Bell . . . is the manufactor [sic] and owner of the weapon in question." Id. at 3.

The Regional Director ruled against the petitioner. Scannell-Vessella Decl. Ex. D, at 4-5. The Regional Director found that the DHO decision was reasonable in light of the evidence. Id. Additionally, the Regional Director found that the petitioner's claims of falsification by Jones and the FCI administrators were not credible because nothing in the video surveillance or evidence undermined the officers' credibility or contradicted their findings. Id.

The Regional Director also found that both of the petitioner's defenses to the substantive charges had no merit. Id. at 4-5. As to the Code 201 infraction (fighting), the Director determined that defending oneself with physical force is not a defense to the charge of fighting. Id. at 5. The Director stated that an inmate facing an assault should not engage in a fight but should instead report the incident to the prison staff. Id. As to the Code 104 infraction (possession of a weapon), the Director found that the fact that Bell owned the

6

weapon was immaterial because it does not matter who owned the weapon for the purposes of the possession infraction. Id. at 4.

On April 19, 2016, the petitioner appealed the Regional Director's opinion to the BOP's Office of General Counsel. Id. at ¶ 9. The Office of General Counsel did not respond to petitioner's appeal within the time allotted for a response. Id. The absence of a response to the appeal is construed as a denial of his appeal. Id.; see 28 C.F.R. § 542.18.

The petitioner filed the current petition for a writ of habeas corpus on August 1, 2016. In his petition, the petitioner alleges that his right to due process was violated because of various deficiencies in the disciplinary process. First, the petitioner alleges that the FCI administrators, including Officer Jones, lied and falsified evidence to justify the disciplinary ruling. Pet. at 4. Second, the petitioner alleges that he did not receive an ADO detailing the charges against him within twenty-four hours of his detention. Id. Third, the petitioner alleges that the BOP had no basis to punish him for fighting because he was not fighting, but was "attack[ed]". Id. at 5, 9. Fourth, the petitioner alleges that he was denied the opportunity to call Jones as a witness at his hearing. Id. at 4, 9.

In addition to the petition for habeas corpus, the petitioner, apparently in lieu of a reply brief, filed a motion

7

for summary judgment on December 12, 2016. The motion largely reasserts the same arguments presented in the initial petition for habeas corpus, but adds several allegations. In support of his contentions of falsification, he adds two allegations regarding supposed discrepancies in the record. Pet.'s Mot. Summ. J. 3. First, the petitioner notes that Officer Jones's statement reports that the incident occurred at approximately 10:00 a.m., but the SIS report states that the incident occurred at exactly 9:34 a.m. Id. Second, the petitioner notes that the SIS report named "Crawford," not Fulton, as the inmate providing the admission that he was "fighting, but [ ] defend[ing] [himself]." Id. The petitioner also asserts that Bell is the manufacturer and owner of the weapon and that the surveillance video and his medical reports would confirm that he was attacked. Id. at 4.

## II.

As an initial matter, and contrary to the Government's assertion, the Court may consider the petitioner's motion for summary judgment in this proceeding. "A district court ruling upon a petition for the writ of habeas corpus may hear motions for summary judgment, as in civil litigation." See Whitaker v. Meachum, 123 F.3d 714, 715 n.2 (2d Cir. 1997). However, the petitioner's motion merely reiterates his arguments for a writ and does not set forth any specific bases for summary judgment

8

or request any relief under the summary judgment standard. Therefore, the motion is denied as procedurally inadequate. Further, because the petition is denied as set forth below, the motion for summary judgment is also denied as moot.

However, because the petitioner is pro se, and courts are instructed to read filings by pro se litigants leniently, this Court will consider the allegations presented by the petitioner in the summary judgment motion in deciding his petition for habeas corpus. See Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983).

### III.

The petitioner has petitioned this Court for a writ of habeas corpus for alleged violations of his right to procedural due process during a disciplinary proceeding.

Although prisoners do not completely lose their right to due process when they are incarcerated, their rights are diminished by virtue of being confined. "[T]he only process due an inmate is that minimal process guaranteed by the Constitution." Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir. 2004); see also Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (finding that in a prison disciplinary proceeding an inmate is not entitled to "the full panoply of rights"). The inmate is guaranteed the right "to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity

9

to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004).

**A.**

The petitioner argues that he should not have been punished for the altercation because he was not fighting, but was attacked by Bell and simply defended himself. Pet. 5, 9; Banks Decl. Ex. D, at 2. The petitioner also argues that he could not be charged with possession of a weapon because he was not the owner of the weapon he allegedly possessed. Pet.'s M. Summ. J. 4; Scannell-Vessella Decl. Ex. D, at 3. In making these arguments, the petitioner apparently questions the sufficiency of the evidence supporting his discipline. The respondents argue that the petitioner's allegations are without merit because the record contains adequate evidence to support the DHO's finding that the petitioner engaged in a fight and possessed a weapon.

In a prison disciplinary proceeding, procedural due process requires only that "there be some evidence to support the findings." Superintendent, Mass. Correct. Inst., Walpole v. Hill, 472 U.S. 445, 457 (1985) (emphasis added); see also Sira v. Morton, 380 F.3d 57, 76 (2d Cir. 2004). This Court's application of the "some evidence" standard is narrowly focused. Sira, 380 F.3d at 76. "Ascertaining whether this standard is

satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. The Second Circuit Court of Appeals, however, has clarified that the phrase "any evidence" is not to be construed literally; "reliable evidence" is required under the "some evidence" standard. Luna, 356 F.3d at 488; see also Sira, 380 F.3d at 76. See also Shirazi v. Cereney, No. 06-cv-6304 (JGK), 2007 WL 1630331, at *2 (S.D.N.Y. May 31, 2007).

Here, the DHO's determination that the petitioner engaged in a fight and possessed a weapon was supported by reliable evidence. The disciplinary officers relied on the statement made by Jones that he observed the petitioner on top of Bell hitting him with a weapon; video surveillance of the fight; and the petitioner's admission that he "was fighting." (Banks Decl. Ex. D, at 3.) The DHO also relied on the fact that both inmates suffered injuries consistent with fighting. (Id.) This evidence is clearly enough to satisfy the "some evidence" standard. See Sira, 380 F.3d at 76.

The petitioner's argument that he could not be found liable for possessing a weapon because it belonged to Bell is not a basis for relief. The petitioner conceded that he took the

11

weapon from Bell and therefore at that time he possessed the weapon, whoever its true owner was. Similarly, the petitioner's argument that he could not be found liable for fighting because he was only defending himself is unavailing. As the Regional Direction found, the petitioner's recourse to Bell's aggression was not to fight back but to report the incident.

Thus, the disciplinary authorities relied on sufficient evidence in concluding that petitioner participated in a fight and possessed a weapon, and, therefore, petitioner's due process rights were not violated on this basis.[4]

**B.**

The petitioner next contends that Officer Jones and other FCI Administrators falsified documents and lied to secure his punishment and their evidence was therefore not credible.

As noted above, this Court cannot reweigh or reassess the credibility of the evidence offered in the prison disciplinary proceeding. Hill, 472 U.S. at 455-56. Instead, the district court must only determine whether there is "any evidence in the record that could support the conclusion reached by the

---

[4] To the extent the petitioner claims that the Code provisions under which he was disciplined are themselves unconstitutional, those claims sound in substantive due process. Government conduct violates the substantive component of the Due Process Clause only when it is so contrary to the "decencies of civilized conduct" that it "shocks the conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). The petitioner has not demonstrated that these BOP rules violate that standard.

12

disciplinary board." Id. As discussed above, there plainly was ample evidence to support the DHO's decision, and the petitioner's unsupported and conclusory claims of falsification are not, taken alone, sufficient to undermine that evidence.[5] See Sira, 380 F.3d at 69 (describing the some evidence standard as "extremely tolerant"); see also Rodriguez v. Lindsay, 498 F. App'x 70, 72 (2d Cir. 2012) ("Given the absence of any contradictory evidence at the hearing other than [petitioner's] self-serving statement that he was 'set up,' there is nothing to undermine the DHO's reasonable conclusion that [petitioner] was responsible for the weapon found under his mattress.").

To the extent the petitioner argues that the surveillance videos or his medical records will show that he was attacked and

---

[5] Along with a general claim of falsification and deceit, the petitioner makes two specific claims that he purports show that the officers and FCI Administrators falsified evidence against him. First, the petitioner insinuates that Jones is lying about his observations on the morning of the incident because Jones gave a statement in which he said that he heard noise coming from the petitioner's cell at "approximately" 10:00 a.m., but the SIS incident report indicates that the fight occurred around 9:34 a.m. Pet.'s Mot. Summ. J. 3. A twenty-six minute difference between two reports of the incident is hardly sufficient to call into question Jones's entire statement -- especially given that Jones' statement was corroborated by the surveillance video and admissions of the petitioner himself. Banks Decl. Ex. A. Second, petitioner claims that the SIS incident report references "Crawford" in one place and the petitioner insinuates that this shows falsification. Id. at 3. However, this mistake is plainly a typographical error in the same paragraph that identifies Inmate Fulton as the person making the statement. Further, the petitioner does not deny that he in fact made the statements attributed to Crawford in that report. Banks Decl. Ex. D, at 1.

13

was not fighting, Pet.'s Mot. Summ. J. 4, this Court also cannot reweigh that evidence nor assess its credibility. Moreover, the DHO officer actually did review both the surveillance video and the medical reports and specifically cited that evidence as supportive of its position that the petitioner committed the charged offenses. Banks Decl. Ex. A, at 3.

Accordingly, the petitioner's claim that the disciplinary ruling violated his right to procedural due process because of falsification by Officer Jones and the FCI Administrators lacks merit.

C.

The petitioner next alleges that he suffered a deprivation of due process because he did not receive an ADO detailing the charges against him within twenty-four hours of his detention. However, the evidence plainly shows that petitioner received an ADO at approximately 1:00 pm on the day of the incident, October 8, 2015. Scannell-Vessella Decl. Ex. C. And in any event, due process only requires that "prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing." Sira 380 F.3d at 70. The petitioner received the SIS incident report detailing the charges against him on October 23, 2015 -- at least two days before his first disciplinary hearing on October 26, 2015. Banks Decl. Ex. A, at 2.

Therefore, the petitioner's right to due process was not violated on this basis.

**D.**

Finally, the petitioner alleges that he was deprived of due process because he was denied the opportunity to confront Jones at the DHO hearing on November 12, 2015.

Inmates do not have a constitutional right of confrontation or the right to cross-examine witnesses at disciplinary proceedings against them. See Kalwasinski v. Morse, 201 F.3d 103, 108-109 (2d Cir. 1999); Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993); Marino v. Humphrey, No. 05-cv-6571, 2006 WL 2786182, at *4 (S.D.N.Y. Sept. 27, 2006). Because inmates have no right to confrontation, it is permissible for the disciplinary officers to offer at a disciplinary hearing a witness statement that was taken outside the presence of the inmate, as was done in this case. See Kalwasinski, 201 F.3d at 109; Shirazi, 2007 WL 1630331, at * 4. The petitioner therefore had no constitutional right to cross-examine Officer Jones.

Additionally, BOP regulations provide that "the DHO need not call witnesses adverse to [the inmate] if their testimony is adequately summarized in the incident report or other investigation materials." 28 C.F.R. § 541.8(f)(2). The DHO found that Officer Jones need not be called at the petitioner's

15

request because Officer Jones was an adverse witness and he had provided a written statement. Banks Decl. Ex. D, at 2.

Moreover, the petitioner did not suffer any prejudice as a result of this denial. To prevail on a procedural due process challenge to a prison disciplinary proceeding, the petitioner must show there was prejudice to petitioner's case as a result of the alleged violation. See Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial.").

Here, no prejudice resulted from denying the petitioner an opportunity to cross-examine Officer Jones at his hearing because other evidence offered at the hearing was sufficient to satisfy the "some evidence" standard. Even if the petitioner cross-examined Officer Jones, other evidence in the record -- such as the petitioner's own admission that he was fighting -- would still have been sufficient to satisfy the "some evidence" standard. And the petitioner has failed to show what evidence he could have adduced from Officer Jones that would have undermined the basis for the charges against the petitioner.

Therefore, the petitioner's right to due process was not violated because he was denied the opportunity to confront Officer Jones at his disciplinary hearings.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For all of the above reasons, the petition for habeas corpus is **denied**. The motion for summary judgment is also **denied**. The Clerk is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
           **January 11, 2018**

                                            **John G. Koeltl**
                                      **United States District Judge**